The court now calls case 118217, Carol K. Klain v. Southern Illinois Hospital Services. Are you ready to proceed? Yes, ma'am. Epley, ready? Yes, ma'am. May it please the court, counsel. My name is Kara Jones and I am representing Southern Illinois Hospital Services in this matter. This matter is before the court on a discovery order compelling the production of certain documents. In the trial court, the hospital presented the trial court with a number of documents labeled the group exhibits A through O and asserted various privileges. The trial court found that all of those documents were privileged from disclosure with the exception of group exhibits B, F, and J. The hospital subsequently produced exhibits, documents in group exhibit B and appealed the court's ruling with regards to F and J. In the appellate court, they affirmed the trial court's finding that the documents in both of those group exhibits were not privileged but did make certain modifications allowing us to redact some information. We filed a petition for leave to appeal and we are only challenging the appellate court's ruling with regards to the documents contained in group exhibit F. Those documents are Dr. Dressen's applications for privileges. The original suit to which this discovery dispute arose involved the claim of medical malpractice against Dr. Dressen and they subsequently added a negligent credentialing claim against the hospital, which is where the applications and other documents involved in his credentialing process became in question. Through this appeal, we are asking this court to modify the appellate court order and hold that Dr. Dressen's applications are privileged pursuant to the Healthcare Professionals Credential Data Collection Act. Alternatively, we are asking that we be allowed, if the court finds that the application is not privileged under that act from disclosure, we're asking permission from this court to redact certain information, specifically information where he refers to information reported to the National Practitioner Data Bank and treatment to Dr. Dressen's non-party individuals. This, of course, in a case involves a question of statutory construction, specifically the Data Collection Act. And the primary objective in statutory construction is to ascertain and give effect to the legislator's intent in enacting the statutory provision. Prior to the enactment of the Credentials Data Collection Act, each hospital used their own specific form for doctors to apply for privileges to practice within its facility. The Credentials Data Collection Act was enacted and signed into law in 1999 and through that act, the Department of Public Health has created a standard form that all hospitals are required to use and all doctors are required to complete and submit. Additionally, that statute provides that that application will be confidential. Specifically, Section 15H of the act says that any credential data collected or obtained by the hospital shall be confidential. It then goes on to say that any redisclosure of the credentials data contrary to the section is prohibited. So the specific language of the act states that it's confidential and cannot be redisclosed. Accordingly, it creates a privilege because if it's disclosed, it can no longer be privileged. You're asking that this be inferred, right? Because the statute doesn't create a privilege, is that right? Well, Your Honor, it's my position that if you look at the intent of the legislation, the language used, and also considered in par materia with the Medical Studies Act, including the regulations under the Credentials Act, it does create the privilege because it creates confidentiality and through the regulations, it states that that confidentiality and non-redisclosure, it should be given effect, the Credentials Act should be given the same effect as the Medical Studies Act, which in addition to saying that the information obtained under the Medical Studies Act is confidential, also says it's non-discoverable and non-admissible. But you don't disagree that confidentiality and privilege are separate concepts? In a general sense, and in terms of maybe other things such as, for instance, the Freedom of Information Act, where that act starts with the concept that everything is open and then items can be exempted from that openness pursuant to the statutory provision, I would agree with that. But where the legislature, in this case, specifically provides a process through which the hospital must use, must collect certain data, and the doctor must answer certain data, with the understanding that the documents will be confidential and will not be redisclosed unless there is a specific exception or exemption to that confidentiality, I would disagree with that. That in this particular case, and in this particular statutory language, confidentiality means privilege. Is it inconsequential that the Medical Studies Act provides broader protection from disclosure? In your honor, I don't believe that it does provide broader disclosure because it provides the documents in Section 8-2102 states that the documents, information, records, reviews, et cetera, gathered and used by the credentialing committee to determine privileges are confidential, the same as in here. But 8-2102 adds the additional language, non-discoverable and non-admissible. And the regulations under the Credentialing Act states, Confidential information in the uniform forms in this part are confidential as provided by law, including but not limited to Part 21 of Article 7 of the Code of Civil Procedure, which is the Medical Studies Act, which incorporates 2102. So the court, the legislature, realizing that this is a multiple-step process in credentialing a doctor, has created the same privilege and the same confidentiality provisions for both sections. The application is just simply the first step in credentialing a doctor. After that application is submitted on the form required by the state and under the premise that it is confidential, that application is then discussed and the credentialing committees gather additional information and discuss the application, the additional information, and then make a determination as to whether the doctor should be granted privileges to practice within the facility. But the code itself, the code provision itself, only refers to confidentiality, right? Not admissibility or discoverability. No, Your Honor, the language of Section 2102 specifically provides, contains a section entitled admissibility as evidence. Such information, records, reports, statements, notes, memorandum, et cetera, et cetera, disclosure of any information or data, whether proper or improper, shall not waive or have any effect upon its confidentiality, non-discoverability, or non-admissibility. And there's the case law interpreting the Medical Studies Act provides that the document submitted to a gathered information requested by, obtained by, or developed by a credentialing committee is privileged from disclosure. And this leads to the argument and to the principle of statutory construction of in pari materia. Ms. Smith, before you go further, I wanted to ask, Ms. Jones I mean, I wanted to ask you a question on Section 15H. There is an exception to non-disclosure, isn't there? There are several exceptions to non-disclosure, and of course that also leads, if you look at the rules of statutory construction. And I wanted to ask this, does this mean then that a hospital can disclose information, whereas here it is being sued for negligent credentialing? So what is that exception for if it isn't for that? Your Honor, no. In fact, if you look at the language of the exceptions, it would exclude this type of, it does not include this type of litigation. In fact, one of the exceptions, it provides that the confidentiality provision cannot be invoked to deny access to or use of the credentials data in any proceeding to challenge credentialing or re-credentialing or in judicial review. So if you look at that language as I've read it, as I've set it forth to you right now, a negligent credentialing claim could arguably be concluded in that. The problem with that is the statutory language identifies the specific individuals to which that confidentiality cannot be used to invoke or deny their right to obtain that information. Those individuals include the health care professional, the health care entity, a health care plan, or a hospital. So the legislature has recognized an exception for challenges to credentialing or re-credentialing and judicial review of those challenges to credentialing or re-credentialing, but only to the, only allows access and allows those documents to be produced. Essentially for the administrative review process and for the doctor to challenge whether he was properly granted or not granted privileges. It does not, although the legislature could have done so, allow third party litigants filing negligent credentialing claims, which would clearly be proceedings to challenge credentialing, access to the applications. Well, should we be concerned then about the public policy implications? That is, would our holding that the information is discoverable chill the free exchange of information regarding the physician's capabilities and qualifications? Yes, Your Honor, and that once again leads to my argument with regards to in peri materia and the court, the appellate court's decision in Davis versus Kiwani Hospital. In that case, which was a 2014 case from the second district, the court discussed the purpose of the decision, and the reasoning for enacting not just the Medical Studies Act, but also the Data Collection Act. And with regards to the Data Collection Act, they noted that the act created a uniform form that all hospitals must use and all doctors must complete and submit. And that the adoption of a uniform form ensures accuracy, completeness, efficiency, and current information, which in turn ensures the healthcare entities correctly assess and validate the qualifications of healthcare professionals. Making this information confidential further ensures its accuracy through honest peer review. They then discussed the Medical Studies Act, which has similar purposes and has been found to ensure that members of the profession would effectively engage in self-evaluation of their peers and an interest in advancing the quality of healthcare. The Davis court then concluded that honest peer evaluation is critical to the collection of accurate credentials data, because it is impossible to accurately assess and validate a health professional's qualifications if the data collected is inaccurate, incomplete, or not up to date. And they then concluded that the obvious risk of incomplete or incorrect information is the credentialing and recredentialing of unqualified healthcare professionals, which would affect the quality of healthcare that patients receive. By regulating and standardizing the credentialing and recredentialing process, the Credentials Act was designed to prevent this sort of injury. So the acts work together and are integral to the process through which the hospital evaluates the qualifications of a doctor practicing in a facility. I want to understand the facts here and get back to a question I asked you earlier. I think that both the amicus and your reply brief point to the Illinois Administrative Code in arguing that the statute should be construed in pari materia. Is that right? Well, no, my argument is that this court has found that in pari materia applies where two statutes or two parts of one statute concerning the same subject must be considered together in order to produce a harmonious whole. These statutes clearly have the same purpose, have the same goal, and in order to create a harmonious whole. You don't point to the Administrative Code? I believe that the Administrative Code is further evidence that the two statutes are similar and are of the same subject. That's the code I was referring to earlier. That code only refers to confidentiality, right? It doesn't refer to admissibility or discoverability. You know what the regulations, the code provision says, which is section 965.14B. It provides that confidential information in the uniform forms in this part are confidential as provided by law, including but not limited to part 21 of article 7 of the Code of Civil Procedure and otherwise may not be redisclosed without written consent of the health care professional. And once again, 2102 not only discusses confidentiality, but discoverability and non-admissibility. So by, through the regulations, the court, which were promulgated pursuant to authority of the Illinois legislature, the court, or the legislature has, or the Illinois Department of Public Health has said that the documents submitted, i.e. the applications that are submitted are required to be submitted on the form that was submitted to the court. And what has been promulgated by the Illinois Department of Public Health is to be given the same protection as the documents submitted to the Peer Review Committee, generated by the Peer Review Committee, or obtained by the Peer Review Committee under the Medical Studies Act. In this case the court, this court has found that if a statute changes, that the procedure changes and the application changes. If the two statutes are parts of the same statute, are considered to be one spirit and a single policy, they are to be considered in priori materia for purposes of statutory construction. And they must be presumed that the legislature intended the enactments to be consistent and harmonious. But what the appellate court did in this case is the exact opposite. They found that they have created inconsistency and discord in the two statutes. What they have effectively done is said, okay, it's all part of the same credentialing process. The application submitted to the Peer Review Committee, who then evaluates that application and all of the other information that they gather, such as documents from the National Practitioner Data Bank, which they're required to obtain, third party assessments of ability, these are all things that are covered by the Medical Studies Act, which they acquire to evaluate a doctor. The application part of that, the appellate court has said, is not privileged. You can get that over, even though the court has said it's confidential. And pursuant to the regulations is to be given the same protection as the Medical Studies Act. But the rest of the documents, the stuff that the Peer Review Committee obtains to evaluate, to complete the evaluation, is not discovered. That's inconsistent and is not only inconsistent with the doctrine of in pari materia, but is inconsistent with the language of the statute. We would ask that the appellate court's decision be found to be non-discoverable, privileged from discovery in this case. Thank you. Tom Keith. Madam Chief Justice, and may it please the court, my name is Tom Keith III. I represent the appellee. And I want to start by saying that I want to start by trying to be as clear as I can about what it is that's really going on here, and what it is that they are really asking for. And, Justice Byrd, I think you touched on it, when you specifically asked about negligent credential. What they are asking this court to do, without actually asking this court to do, because they can't actually ask this court to do it, is to effectively provide them with the evidence that this torpedo, negligent credentialing, is a cause of action. Because if you think it through, what we're asking for here, and all we're arguing is, as has been pointed out by multiple members of the court, Justice Thomas, in particular you, the Medical Studies Act uses three distinct concepts. That's got to mean something. The Medical Studies Act talks about confidentiality, but it also talks about inadmissibility, and it talks about nondiscoverability. Three separate concepts. By contrast, Section 15H of the Data Collection Act only talks about confidentiality. And it's the difference in protection from the general public, and protection from a general public, that this is a cause of action, after obtaining a certificate of merit, has to survive a motion to dismiss, has to make all of these showings of relevance before he is entitled to every man's evidence. Those are steps that we have to take here. Even if you do those things, though, within the Medical Studies Act, you don't get the information. The reason that you don't get the information is because we are concerned about this peer review process. What the peer review process talked about in the Medical Studies Act, the Medical Studies Act points to the four specific circumstances when that peer review information is privileged. It talks about internal quality control. It talks about anything targeted toward improving patient care. It talks about organ or tissue donation, and it talks about mortality and morbidity conferences. The legislature, they talk about that. They specifically say that in the Medical Studies Act, and that's why it is not just confidential, but it goes beyond that. And it's non-discoverable and non-admissible. That language isn't present in Section 15A. It's not there. And the reason it's not there is because the same concerns implicated by the Medical Studies Act are not implicated by the Data Collection Act. And the reason for that is that it comes earlier in the process. And the reason for that is because what the Data Collection Act does, as Council points out, is that it standardizes the job application process for better or for worse. This is information that everybody is required to provide. These are the forms that you have to fill out, and everybody's got to give the same information, and everybody has the same responsibilities to update that information. It streamlines the process. But those are all of the documents that are provided to permit the peer review process and a decision as to whether it's credentialed or not. We're not there yet. By contrast, with respect to the Medical Studies Act, when we have these conferences and this peer review and everything else, it's like social program review measures. And Justice Carmichael, you actually talked about that, and that became an issue in the One Hope case, which was another discussion about privileges and this issue with respect to privileges. But that's later in the process here. The Medical Studies Act is targeted toward protecting patients. The Data Collection Act is targeted toward protecting patients. But there are different points in the process. There are different points in the process. And what effectively they're talking about here when they talk about a chilling effect. And I don't understand really what that chilling effect is. I get it with respect to the Medical Studies Act, and I get it in part because the legislature makes it very, very clear that these are the things that we are concerned about, and this is why it's not just confidential, but it's non-discoverable. It doesn't come in period. You don't get to see it. This is why it is that we do that. I don't understand what the chilling effect is here in this case. If we don't hold that these documents are not just confidential, if we don't decide that confidentiality is tantamount to non-discoverability, even though they're separate concepts in the statute, then what exactly is the chilling effect? Are we concerned that doctors are going to be less honest on their applications if they think that it could potentially lead to negligent credentialing or some other cause of action? I don't understand what else it could be. I get a lack of candor after it's already happened. But here, what they are essentially asking for, and what they are essentially arguing, is that the only way we can ensure proper credentialing, the only way we can ensure that our doctors are as qualified as possible and properly credentialed, is if we remove the potential check of the court system, and if we remove the threat of a cause of action and the threat of a plaintiff lawyer trying to hold us accountable for negligent credentialing. Because the only way you can make the case is with the information that they had when they made the credentialing decision. It's tantamount to medical records in a medical malpractice case. That's what they're saying. And the net effect of what they're saying and what they're advocating and what this holding would be is I don't know how you can make a case. I don't know how you can establish negligent credentialing as a cause of action if you're not entitled to the information that the hospital relied upon in making the credentialing decision. Mr. Keefe? Yes, sir. Just for the sake of argument, acknowledging your distinctions between admissibility, discoverability, and confidentiality, if your position is upheld, how does confidentiality under this statute play out? What's to be protected as confidential then? Everything remains protected as confidential. It's not a question of this is at risk of discovery. The presumption is confidentiality. You have that as a presumption. But that's a separate concept from admissibility and discoverability. And so the way that that plays out and the way it plays out just in practice and logically is that the presumption is confidentiality and the litigant has several hurdles that he has to clear and several things that must be established in an adversarial proceeding before you are entitled to that information. So the presumption of discoverability. There's a presumption that everything relevant is discoverable unless the legislature specifically says so. The legislature specifically says so in the Medical Studies Act. The legislature does not specifically say so in Section 15.8. And there are good reasons for that because when we think about it in practice, what the Data Collection Act talks about and asks for and requires is that the data collection act requires is earlier in the process. By the time that we get into these concerns implicated by the Medical Studies Act, the torque has already occurred. We're looking back on it. We're trying to make sure that this does not happen again. We want to be as honest as possible and make sure that that honesty, which is used to save future patients' lives, prospective patients' lives, cannot come back and be used against us. Here, with respect to the Data Collection Act and earlier in this process, we're talking about those prospective patients who we don't want to suffer that torque that's going to lead to that conference that's required. So we are earlier in the process. That's why the legislature uses different reasons. That's why they use different language. And it completely makes sense. It just makes sense. They talk about the very material and how it is. And I'm not sure if I'm using that phrase right or not. But they are read in concert. The appellate court read the two statutes in concert. Justice Bomer specifically did so, along with Justice Lohse and Justice Chapman. They specifically discussed the Medical Studies Act in the context of the Data Collection Act. They specifically observed that when one, it's closely related. And they are interrelated. When one provides more protection, or at the very least, uses three distinct concepts, which I believe they correctly inferred means more protection, and the other only uses one of those three, then there must be a reason. We've got to presume that the legislature was aware of the Medical Studies Act when they passed the Data Collection Act. We've got to presume that one is related to the other. Certainly the appellate court did. They studied the two together. What the defense accuses the appellate court of not doing, they actually did. They just don't like what the net result is. Because the net result is, unless we specifically say something is not discoverable, it's discoverable. Unless we specifically carve out a privilege, there is no privilege. Chief Justice, that's the first question that you asked. And you asked, are you asking us to infer a privilege? And they are. They have to ask you to infer a privilege because it has not been expressly stated. And the legislature certainly knows that this court, all Illinois courts, requires something to be specifically slated and are loathe to carve out of the common law, an exception, again, one hope, unless there's a reason to do so. They've got to specifically say so. They didn't say so here. So it's being asked to be inferred. And if we're going to infer one, then we have to examine what the public policy reason is to infer that. What is that potential chilling effect? We know the chilling effect. The legislature spells out the chilling effect. The Medical Studies Act. They don't do so here. What is it? I don't understand what the potential chilling effect is. The only way that we can ensure doctors are completely honest is if we take away a potential check on them being completely honest. That's what the argument is. And I've got to think also, with respect to our General Assembly, that if they intended to effectively abolish the tort of negligent credentialing, as a cause of action, I'd have to think that they would say so. I'd have to think that they would make it clear. And that's the other thing with respect to reading the two statutes in concert. Now, Section 2102 of the Medical Studies Act talks about and uses the heading admissibility as evidence. I understand what a heading is in a statute. Does it necessarily have any impact on it? But at the very least, it demonstrates that the legislature is aware of the fact that these documents generated, and all of this stuff generated, can potentially be used in a cause of action in any type of a lawsuit. If they're aware of that fact, and they're completely silent with respect to that same issue as used in the Data Collection Act, they use it one place, they don't use it the other place. If they use three words one place, they only use one word the other place. They employ three separate concepts here and only one there. There's got to be a reason for that. You've got to assume a reason for that. And the reason for that is that while it's still presumed to be confidential, if certain thresholds can be established, policy in the state of Illinois, waste management, and everything since then, it's relevant, it's discoverable, unless they can demonstrate otherwise. Either demonstrate that the legislature specifically said so, if the legislature did not specifically say so, then your public policy argument, those four factors set forth in Homer to make the showing that public policy would support the recognition of such a privilege. And it's just not the case here. The reply brief makes reference to a concern about the relationship between a hospital and the doctor. And it's the third problem of the test. And they're dismissive and they say that far outweighs the concerns of a civil litigant. A civil litigant is the patient. A civil litigant is the person that was harmed as a result of that relationship and who is seeking justice the only way that he or she can because we can't go back in time. We can't go back and make them whole. This is the only thing that we can do. If the legislature intended to abrogate that and just say, nope, we're not going to do that, I'd have to think that they would say so. And they just never did. And I think that's the bottom line. That's just the bottom line in this case. Very briefly, there are other things touched upon in the briefs we haven't talked about in our argument. Number two, I talk about this TTX case from 1998. They do initially. Then I ask that it be overruled. I think that's too far. I don't think you have to overrule it. I think you can just distinguish it on the basis that it's a tax case. And not only that, but they didn't even need to reach the merits anyway. I think I went too far with that. I'm not asking, hey, if you want to overrule it, please, but I think that's too far and I don't think that's necessary in this case because I think the issue is we're talking about a tax statute there. Are two interrelated statutes or what's at issue here? And if we examine those two, we can just leave that other case alone. I want to clarify that. The other thing is that with respect to the Health Care Quality Improvement Act and the argument by counsel that somehow that was not properly interpreted again, they come in with the assumption of privilege. They come in with the assumption of nondiscoverability. And confidentiality equates to inadmissibility. And it is that assumption that they use to then point to the section of Rule 201 that talks about privileges and privileged logs as somehow that's what the starting point is. That's the exception and that's their burden. The assumption, the starting point, the public policy is in favor of disclosure. That's what the appellate court said. That's what the appellate court meant. And that's why the Health Care Quality Improvement Act is properly interpreted because it specifically says as provided by state law. State law in Illinois provides for discovery. May I ask a couple procedural questions about how this case got here? Yes, ma'am. You didn't participate in the appellate court. Yes, ma'am. And then this issue that we have in front of us did not arise until petition for rehearing. Is that right? Maybe I'm wrong about that. But certainly late in the process in this. And the appellate court found that the whole issue was forfeited and then went ahead and said forfeiture aside and took up this issue. So there wasn't much litigation on all of this below. Is that right? Your Honor, I'm not sure if you're referring to the TTX case or in this case. In this case. In this case, I'm not sure that the appellate court talked about anything being forfeited. I make a forfeiture argument with respect to doctor-patient privilege, which is their last argument that they raised in their brief. They raised this issue for the first time in its motion to reconsider, is what it says in the opinion. And then the court says, well, this is forfeited at forfeiture aside. We're going to take it on anyway. And they do that without your presence there because you didn't participate in the appeal. And we didn't participate because we don't know what the documents are. And that wasn't my decision. That was my superior's decision with respect to this case. But we don't know what the documents are, and that's why it is that we didn't go, because it's the same reason that you're not permitted to participate in a privilege law hearing, of course. Now, with respect to what it is that was forfeited and what was addressed otherwise, Justice Steeves, to be honest, I'm not sure exactly what it is that you are referring to, and I apologize for that. I know that the first time that the doctor-patient privilege argument was raised was with respect to, was here in this proceeding. In this proceeding, you mean where? In the Supreme Court? In the Supreme Court, yes. The first time this issue has been raised is here? The issue of the doctor-patient privilege being another reason to generate at least some protection for these documents. The Data Collection Act was all argued below. The other things were all argued below. The only thing that was raised for the first time, to their credit, they recognized that and they acknowledged that in their petition for legal appeal, which they elected to rest on, was this additional alternative argument of these documents at least being partially protected on the basis of a doctor-patient privilege. I addressed that in my brief. I can do some more if you'd like, but that's how that came to be. Thank you, Mr. Keith. Your time has expired. Obviously, of course, we ask that you refer. Your Honor, I'd like to address your question first. What the appellate court found we had forfeited and what they did not decide was the issue, an issue that we raised in the appellate court as to the irrelevance argument. With regard to some of the applications that are contained within the Group Exhibit F, they were submitted to the hospital after the date of Ms. Claney's treatment. It was our position that those documents, even if not privileged or if the court found were not privileged, were not relevant and not subject to discovery because they occurred after the treatment provided to Claney and, therefore, those documents didn't play any part or any consideration by the credentialing committee into the determination as to whether he should be credentialed. And, of course, negligent credentialing claim is before I was injured, you shouldn't have granted him privileges. We did only raise that in the first time we raised the relevancy argument with regards to those particular applications that were submitted after her injury. It was in a motion to reconsider, but that is the only argument that the court found was forfeited on appeal and all the other arguments with regard that we have presented and all the arguments we're presenting today before this court were heard and ruled upon by the trial court and the appellate court. With the exception, as pointed out, we've raised the alternative argument that any references to the care and treatment rendered to other patients that are contained within the application of Dr. Dressen should be redacted because that information is protected by the physician-patient privilege. We've acknowledged in our PLA that we did not raise that at any time before, but, of course, as this court knows, waiver is restriction on the parties and not on this court. Accordingly, this court would have authority pursuant to Supreme Court Rule, I think it's 366. Yes, it allows a reviewing court to enter any judgment and make any order that ought to have been given or made and make any other further orders and grant any relief that the case may require. And so we've asked, and I've briefed that in my briefing, that the patient-physician privilege, which is a broader and more stringent provision or protection than HIPAA, be found to allow us to redact the information about care and treatment rendered to other patients. But you only get to that issue if you first decide that the applications are not otherwise privileged. I want to address a couple of the other points. Counsel pointed out that the appellate court did interpret these matters together. They considered both statutes. The problem with that is they violated in peri materia because in peri materia requires the two statutes that cover the same subject be considered together and produce a harmonious whole. And as I pointed out, what the court did was create inconsistency between two statutes that are supposed to be interpreted together. And they've created inconsistency in the face of a regulation that was propounded under the Credentialing Act that states that they are to be given the same protection. It also makes a lot of arguments regarding the fact that there should be different protection based upon different procedures. The application process is the first step in the process through which a doctor is credentialed. You can't separate that out any more than you can separate out the Credentialing Committee's request for a confidential third-party assessment of the doctor's ability. It is all part of the credentialing process and should have the same protection. And the court, I'm sorry, and the legislature has found that it should have the same protection. I'd also like to point out that prior to the enactment of the Data Collection Act, the courts had held that the application was not privileged. It wasn't covered by the Medical Studies Act. So the Credentialing Act, in fact, changed this. And the legislature is presumed to know the previous enactments. If they like the fact that the applications could be produced in civil litigation, why enact the statute? There wouldn't be any need for it. And they definitely wouldn't need to state that it's confidential and further indicate in the statute that there's no exception for medical malpractice litigation or negligent credentialing claims. Plaintiff's counsel doesn't like the fact that the legislature has determined that the entire process of credentialing a doctor, from the start, which is the submission of an application on a required form, to the end, when the doctor actually gets credentialed, should be privileged or be confidential. He doesn't like that because he believes that it will be detrimental to a negligent credentialing claim. A negligent credentialing claim can still be asserted if they can establish evidence outside of the peer review process that this doctor was incompetent or incapable of performing his job. Furthermore, if he wants to have the legislature create exceptions for litigation such as this, then that's an issue that should be taken up with the legislature who enacted the statute and specifically did not provide such an exception. He also argues that everything is confidential and there's a distinction between confidential, non-discoverable, and non-admissible. But once again, that violates the principles of statutory construction, which prevents or states that the statutory language should be given its fullest rather than its narrowest possible meaning to which it is susceptible, and that the court must avoid interpretations that render the statutes at issue insignificant, meaningless, inoperative, or nugatory. If you say, okay, the statute says confidential, but it still can be disclosed, if it's disclosed, it's no longer confidential. So how do you not render the entire act meaningless if you allow disclosure? In spite of the language of confidentiality contained within the statute. I'd also like to point out that, you know, he makes a big deal about the fact that without a negligent credentialing claim, they won't have a remedy and they have a right to assert they have a remedy. And they've asserted it, and they did assert it in this case. They have a remedy against the doctor, the doctor who harmed them or allegedly harmed them. The public policy of protecting the general public from doctors and by making all the information confidential and nondiscoverable is an important public policy. Otherwise, the courts wouldn't, or the legislature wouldn't have adopted the Medical Studies Act or the Credential Data Collection Act. We'd ask this court find the applications to be privileged and nondiscoverable under the Data Collection Act and reverse the appellate court decision providing otherwise. Thank you. Case number 118217, Carole Klain v. Southern Illinois Hospital Services will be taken under advisement as Agenda 19. Ms. Jones and Mr. Keith, thank you for your arguments this morning. You are excused at this time. Marshall, the court will take a 10-minute recess.